IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LARRY JOHNSON                                                                  PLAINTIFF

v.                                       Civil No. 5:16-cv-05090

OFFICER J. VERMILLION;
And OFFICER SLAPE                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, Larry Johnson, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Timothy L Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. (Doc. 29) After careful consideration, I make the following Report and Recommendation.

## BACKGROUND

Plaintiff filed his Complaint on April 27, 2016, against Defendant, Sergeant Craig Stout, alleging his constitutional rights were violated when the vehicle he was driving was illegally stopped and searched, he was deprived of personal property upon his arrest, and he was defamed after his arrest. (Doc. 1) On August 17, 2016, the Court entered an Order removing Defendant Stout from this lawsuit and substituting as defendants Officer Jesse Vermillion and Officer Kent Slape. (Doc. 17) Plaintiff is currently incarcerated in the Arkansas Department of Correction – Wrightsville Unit, in Wrightsville, Arkansas. He is suing Defendants, Vermillion and Slape, in both their official and individual capacities. Plaintiff is seeking compensatory damages and the return of personal property he alleges was confiscated during his arrest. (Doc. 1)

1

Defendants filed a summary judgment motion on February 24, 2017, alleging they are entitled to judgment as a matter of law because: 1) Defendants did not stop Plaintiff, and once Plaintiff was actually detained, Defendants had probable cause to do so; 2) Defendants had probable cause to search the vehicle; 3) there is an available post-deprivation state remedy for Plaintiff to pursue with regard to his personal property; 4) defamation is not actionable under § 1983; 5) Defendants are entitled to qualified immunity; and, 6) there is no basis for official capacity liability.  (Doc. 29)  Plaintiff filed his Response to the summary judgment motion on June 28, 2017. (Doc. 35)

Plaintiff alleges on March 22, 2016, he and his wife were driving when they noticed a car following them "with his headlights off for a minute/while…so me and my wife parked the car, took keys out of the ignition, got out of the car [to] see who was following us." (Doc. 1)  According to Plaintiff, after he and his wife exited the car the police walked over and asked what they were doing and indicated that the license plates of the vehicle "had come back stolen, and asked may he search the car, and I stated that the car wasn't minds so I can't give him the concent to search as well as my wife did also!  So he said well im searching it anyway." (Doc 1) (All errors in original.) Plaintiff states the officer then placed him and his wife under arrest and proceeded "the search without us present."  (Doc. 1)  Plaintiff filed an Addendum to his Complaint on July 20, 2016, asserting "the purpose of this lawsuit is because of it has gave me and my wife an reputation, media distress, emotional distress, public humiliation and a disgrace to our family & friends!"  (Doc. 14) (All errors in original.)

Defendants, Vermillion and Slape, are both officers with the Fayetteville Police Department.  According to the Affidavit of Defendant Vermillion, he was traveling south on South School Avenue in Fayetteville when he noticed a silver Dodge Avenger with an Arkansas License

plate enter the center turn lane, continue south, and eventually turn into the parking lot at Anne's Attic. After passing Anne's Attic, the Avenger re-entered the roadway and continued south on South School and then turned east on to Nonnamaker. Defendant Vermillion states he then parked his vehicle in a parking lot near School and Cato Springs road and watched the Avenger exit a driveway south of Nonnamaker and continue south on South School. Defendant Vermillion then pulled out and positioned his vehicle behind the Avenger. The Avenger then turned east onto Twenty Sixth and into the parking lot of the Grandview Apartments. It came to a stop in a parking space shortly after entering the parking lot. Defendant Vermillion parked his vehicle at 12:16 a.m. near the curb so it would not block the Avenger in the parking lot. At that time he called dispatch to check on the license plate of the Avenger. At this point, Defendant Vermillion states he believed he had reasonable suspicion that the driver of the vehicle might be engaging in criminal activity based on his evasive driving, but he did not stop the vehicle or detain the driver. (Doc 29-1, ¶ 5-6)

Defendant Vermillion then observed the driver, who was later identified as Plaintiff, and a passenger, later identified as Plaintiff's wife, exit the vehicle. At 12:17 a.m. he approached Plaintiff and his wife, identified himself, and asked them if they were lost. According to Defendant Vermillion, at this point he considered his contact to be a consensual encounter and Plaintiff and his wife willingly talked to him. Defendant Vermillion asked both of them for their identification, and at 12:18 a.m. he was informed by dispatch that the license plate on the Avenger had come back as stolen. Based on this information, Defendant Vermillion detained Plaintiff and his wife and told them to sit down on the curb. At 12:19 a.m. Plaintiff told Defendant Vermillion that he did not have any identification, stated that his name was Tavarus Johnson and gave a date of birth.

Defendant Vermillion states he later learned that Tavarus Johnson was Plaintiff's brother.  (Doc 29-1, ¶ 7-8)

During the encounter with Defendant Vermillion, Plaintiff first stated that the car belonged to him and his wife, and then he claimed he had been allowed to use the car.  Plaintiff's wife eventually said that the vehicle belonged to one of their friends.  Defendant Vermillion attempted to look at the vehicle identification number ("VIN") of the Avenger, and he noticed a lottery ticket had been placed in front of it.  Based on the fact he had information that the license plate on the vehicle had been stolen, Defendant Vermillion opened the door to the car and moved the lottery ticket so he could see the VIN.  Shortly thereafter, Defendant Vermillion was informed by dispatch that the vehicle had been reported as stolen by the Sherwood Police Department.  Based on this information, Defendant Vermillion believed Plaintiff and his wife had committed the offense of theft by receiving and he placed them under arrest.  (Doc 29-1, ¶ 9-11)

Defendant Vermillion then called dispatch and requested a tow truck.  Because the vehicle was stolen, had stolen plates, and Plaintiff had not provided him with any form of identification, Defendant Vermillion believed probable cause existed to search the vehicle for proof of ownership, proper identification for Plaintiff, and other evidence regarding the theft of the vehicle.  Defendant Vermillion read Plaintiff his Miranda rights, and it was decided that Defendant Slape would make sure a tow truck arrived to tow the vehicle from the scene.  Additionally, it was agreed Officer Slape would search and inventory the contents of the Avenger before it was towed.  (Doc 29-1, ¶ 11-13)

As Defendant Slape approached the driver's side of the vehicle he noted the smell of marijuana coming from the vehicle.  According to the Affidavit of Defendant Slape, he had been trained in detecting the smell of marijuana and had been involved in a number of arrests where he

4

had smelled marijuana. He opened the driver's side door and confirmed the odor was coming from the vehicle. When he smelled the marijuana, he believed that probable cause existed to search the vehicle for evidence of contraband. During the search of the vehicle he discovered various items of contraband, including a baggie, a grinder, a pill bottle with marijuana reside, 0.6 grams of methamphetamine, and two glass pipes with methamphetamine reside. A Bryco Arms semi-automatic Model 38 .380 caliber pistol was also found. The contraband, stolen property, handgun, and some of Plaintiff and his wife's personal items were listed on a Property and Evidence Admission Form. Some of Plaintiff and his wife's personal items were turned over to the Washington County Detention Center and were not, however, listed on the Property and Evidence Admission Form. (Doc 29-2, ¶ 12-15)

Defendant Slape also located an identification for Plaintiff during his search of the vehicle. When Plaintiff's correct name was run through the police database it was discovered that a warrant had been issued for Plaintiff's arrest by the Little Rock Police Department for failure to appear on a charge of Possession of Dangerous Drugs. In addition, the background check revealed Plaintiff was driving on a suspended license, and there was an outstanding warrant for his arrest from Washington County from January 26, 2016, for residential burglary and theft of property. (Doc. 29-1, ¶14) After Defendants completed their investigation, Plaintiff was transported to the Washington County Detention Center.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury

5

could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

**1. Search, Seizure and Arrest**

When the totality of the facts based on reasonably trustworthy information would justify a prudent person believing the individual arrested had committed an offense, then probable cause exists for the arrest. *Flynn v. Brown,* 395 F.3d 842, 844 (8th Cir. 2005). Searches conducted outside the judicial process, without the prior approval by a judge or a magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established exceptions. *United States v. Farrell,* 701 F.3d 256, 260 (8th Cir. 2012). The "automobile exception" permits the warrantless search of a vehicle if the police "had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." *United States v. Wells,* 347 F.3d 280, 287 (8th Cir. 2003). If the automobile exception applies, the vehicle need not be searched immediately. *United States v. Castaneda,* 438 F.3d 891, 894 (8th Cir. 2006). "Probable cause sufficient to justify a search also exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kennedy,* 427 F.3d 1136, 1141 (8th Cir. 2005). Courts apply a common sense approach and consider all relevant circumstances in making the probable cause determination. *Id.* There is also an exception to the Fourth Amendment's restriction on searches for a "lawful inventory search" allowing law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable cause. *United States v. Rowland,* 341 F.3d 774, 778 (8th Cir. 2003).

Plaintiff claims he was illegally stopped by Defendant Vermillion, and that the subsequent search of the Avenger he was driving, the seizure of his property, and his arrest by Defendant Slape violated his constitutional rights. These claims fail as a matter of law for several reasons.

First, the summary judgment record demonstrates that the Defendants did not "stop" Plaintiff. In his deposition, Plaintiff admits he was never pulled over or stopped by Defendant

7

Vermillion. (Doc. 29-3, pp. 20:22-21:3) Instead, Plaintiff states he and wife "parked the car, took keys out of the ignition, got out of the car [to] see who was following us…" (Doc. 1)

According to Defendant Vermillion, he watched the Avenger make several evasive maneuvers and then pull into a parking space at the Grandview Apartments. At this point, the Court believes Defendant Vermillion had reasonable suspicion that the driver of the vehicle might be engaging in criminal activity based on his evasive driving and could have detained him. *United States v. Neff,* 681 F.3d 1134, 1137-38 (10th Cir. 2012) ("police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause") (internal citations omitted). Here, Defendant Vermillion did not initiate a traffic stop but parked near the Avenger, called in the license plate number, and exited his vehicle. Defendant Vermillion then approached Plaintiff and his wife, identified himself, and asked if they were lost. (Doc. 29-1, ¶ 5)

After learning from dispatch that the license plate on the Avenger was stolen, Defendant Vermillion asked Plaintiff and his wife for identification and told them to sit down on the curb. Plaintiff told Defendant Vermillion he had no identification and gave false information as to his identity and birthdate. After obtaining Plaintiff's true identity, it was discovered Plaintiff was driving on a suspended license and had two outstanding warrants for his arrest – one from Little Rock (relating to drug charges) and another from Washington County (issued on January 26, 2016, for Residential Burglary and Theft of Property). After Defendant Vermillion called in the VIN on the Avenger and was advised the vehicle was stolen, probable cause existed for Defendant Vermillion to arrest Plaintiff and his wife.

Because Defendant Vermillion had proof the license plate and the vehicle had both been called in as stolen, and Plaintiff had failed to present any proof of identification, and had given

8

conflicting statements as to whether he owned the vehicle, Defendant Vermillion had probable cause to believe the vehicle contained evidence to show the vehicle had in fact been stolen by Plaintiff, and probable cause existed to search the vehicle pursuant to the "automobile exception" to the Fourth Amendment's prohibition against warrantless searches and seizures.

Before any search began, Defendant Slape detected the smell of marijuana coming from the Avenger. He then opened the car door and determined the odor was coming from inside the vehicle. The Eighth Circuit has held numerous times that the smell of marijuana provides probable cause to justify a search of the vehicle. *See United States v. Smith,* 789 F.3d 923, 928-29 (8th Cir. 2015), citing *United States v. Peltier,* 217 F.3d 608, 610 (8th Cir. 2000) (deputy had probably cause to search a truck where the deputy smelled odor of burnt marijuana coming from the cab). Moreover, Defendants then followed the Fayetteville Police Department's rules and regulations that applied to towing, impounding and inventorying of the contents of the Avenger. Without question, Defendants were also entitled to conduct an inventory search of the Avenger under the circumstances.

Accordingly, Plaintiff's claims relating to an unconstitutional search, seizure and arrest fail as matter of law.

### 2. Deprivation of Property

According to Plaintiff's Complaint, Defendants took his clothes, cell phone and shoes. (Doc. 1) In his deposition, however, Plaintiff initially testified the only thing he did not receive back from Defendants was his wife's cell phone. (Doc. 29-3, p. 49:14-15) Plaintiff then claimed he did get all of his clothes back. (Doc. 29-3, p. 49:22-25) He claimed moments later that he didn't get his phone back. (Doc. 29-3, p. 50:2-5) He then testified that a white Google pebble watch was still missing, that some of his wife's clothes were missing, and he wasn't sure if he got all of his clothes back. (Doc. 29-3, p. 51:9-25)

According to Defendant Vermillion, most of Plaintiff's private property was taken to the Washington County Detention Center. What could not be stored there was submitted into evidence for safekeeping at the Fayetteville Police Department and listed on a Property and Evidence Submission Form completed by Defendant Slape. (Doc. 29-1, ¶ 16) Other than his inconsistent allegations of what property has allegedly not been returned to him, Plaintiff has not submitted any proof his property was taken by Defendants.

Even if the Court assumes for purposes of this summary judgment motion that Defendants did unlawfully take and retain some of Plaintiff's personal property, the Supreme Court has held that an unauthorized intentional deprivation of property by a state or county employee does not constitute a violation of the procedural requirement of the Due Process Clause of the Fourteenth Amendment so long as a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer,* 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 383 (1984). Arkansas law provides a post-deprivation remedy for a loss of property in the form of an action for the tort of conversion. *See Brown v. Blake,* 86 Ark. App. 107, 161 S.W. 3d 298 (2004). Because there exists a meaningful post-deprivation remedy for Plaintiff's alleged loss, Plaintiff does not have a valid federal claim under 42 U.S.C. § 1983.

Accordingly, Plaintiff's claim for deprivation of property fails as a matter of law.

**3. Defamation**

Plaintiff alleges Defendants Vermillion and Slape were responsible for placing information about his arrest on the internet, Facebook, in the newspapers, and on television, and that such exposure caused Plaintiff embarrassment and humiliation. (Doc. 1) However, "[d]efamation, per se, is not actionable under section 1983." *Underwood v. Pritchard,* 638 F.2d 60, 62 (8th Cir. 1981). "[A] defamed person has not been deprived of any right, privilege or immunity secured to

him by the Federal Constitution or laws of the United States." *Ellinburg v. Lucas,* 518 F.2d 1196, 1997 (8th Cir. 1975) (citations omitted).

Accordingly, Plaintiff' claim for defamation fails as a matter of law.

### 4. Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants Vermillion and Slape are entitled to qualified immunity. *See Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right, the defendant is entitled to qualified immunity).

### 5. Official Capacity Claim

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Vermillion and Slape are treated as claims against the Fayetteville Police Department. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Defendants' official capacity liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or

procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

725 F.3d at 828 (citations omitted).

In this case, there are only allegations with regard to the search of a stolen vehicle, the seizure of Plaintiff's property, and his arrest on March 22, 2016. Plaintiff has not presented any evidence of an unconstitutional policy or custom of the Fayetteville Police Department that contributed in any way to an alleged violation of Plaintiff's civil rights.

Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

## CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 29) be **GRANTED,** and that all claims against them be **DISMISSED WITH PREJUDUCE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of July, 2017.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE